UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DANIEL GASKINS                                                                      Plaintiff

v.                                                          Civil Action No. 3:22-cv-306-RGJ

SWOPE VENTURES, INC. d/b/a/ SWOPE                                          Defendant
MITSUBISHI

* * * * *

MEMORANDUM OPINION AND ORDER

Defendant, Swope Ventures, Inc. d/b/a Swope Mitsubishi ("Swope") moves to dismiss and compel arbitration. [DE 5-1].[1] Plaintiff, Daniel Gaskins ("Gaskins") responded [DE 6] and Swope replied [DE 8]. Gaskins moved for leave to file a copy of his driver's license under seal. [DE 7]. Gaskins also moved to strike arguments first raised in Swope's reply or, alternatively, seek further discovery. [DE 9]. Swope responded [DE 10] and Gaskins replied [DE 11]. These matters are ripe. For the reasons below, the Court **GRANTS** Swope's Motion to Dismiss Gaskins' Complaint and Compel Arbitration [DE 5-1], **DENIES AS MOOT** Gaskins' Motion for Leave to File Document Conventionally Under Seal [DE 7], and **DENIES** Gaskins' Motion to Strike [DE 9].

I.    BACKGROUND

In June 2021, Gaskins became employed as a Quick Lane Technician at Swope in Radcliff, Kentucky. [DE 1-1 at 9]. On November 5, 2021, Swope terminated Gaskins citing persistent tardiness. [*Id.* at 12]. Gaskins alleges that he was terminated in retaliation for engaging in activities protected by federal law in violation of the Fair Labor Standards Act. [*Id.* at 13]. He

---

[1] Although Counsel for Swope attached a Memorandum of Law in Support of the Motion to Dismiss Gaskins' Complaint and Compel Arbitration [DE 5-1], the Joint Local Rules for the Eastern and Western Districts of Kentucky contemplate a single, unified motion and memorandum. *See* Local Rule 7.1. Going forward, Counsel is advised to file a unified motion.

also alleges that his termination violated public policy and that Swope failed to pay his agreed-upon wage. [*Id.* at 14–15].

Swope alleges that Gaskins sued prematurely in violation of a mandatory mediation agreement between Gaskins and Swope. [DE 5-1 at 30]. Swope also alleges that the claims asserted in Gaskins' Complaint are subject to mandatory arbitration pursuant to a Dispute Resolution Agreement [DE 5-2 ("Agreement")] that was included with an employee handbook. [DE 5-1 at 31]. The Agreement provides:

> If you have a work-related problem that involves one of your legally protected rights . . . which has not been resolved through the earlier steps, you must request arbitration. . . . Claims and disputes subject to arbitration include all those legal claims you may now or in the future have against [Swope].

[DE 5-2 at 42–43]. The list of legal claims subject to arbitration under the Agreement include, among others, claims for wages or other compensation, claims for wrongful termination, and claims for retaliation. [*Id.* at 43]. Gaskins acknowledged and accepted the Agreement, under an electronic signature provided by Swope. [DE 5-3]. The electronic signature includes a signature for "James Gaskins," an IP address, and an acknowledgment date of June 15, 2021. [*Id.*]. In response, Gaskins alleges that he was never provided with the employee handbook or the Agreement and that he never provided an electronic signature. [DE 6 at 53]. Gaskins offered to provide a copy of his driver's license for a comparison to the electronic signature. [*Id.* at 54].

## II.    GASKINS' MOTION TO STRIKE [DE 9]

Gaskins moved to strike Swope's reply or, in the alternative, compel discovery because Swope allegedly introduced new arguments in its reply. [DE 9]. In response, Swope contends that it merely responded to arguments introduced by Gaskins in his response to Swope's motion to compel arbitration. [DE 10].

Rule 12(f) of the Federal Rules of Civil Procedure governs motions to strike pleadings.[2] It provides that upon a motion made by a party, "[t]he court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court may strike portions of the pleading on its own initiative or "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(1)–(2). "Motions to strike under Rule 12(f) are addressed within the sound discretion of the Court, although they are generally disfavored." *Hashemian v. Louisville Reg'l Airport Auth.*, No. 3:09-CV-951-R, 2013 WL 1788473, at *5 (W.D. Ky. Apr. 26, 2013) (citing *Ameriwood Indus. Int'l Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1083 (W.D. Mich. 1997) (internal citations omitted)). "Striking a pleading is a drastic remedy to be resorted to only when required for purposes of justice." *Id.* (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F. 2d 819, 822 (6th Cir. 1953)). "A motion to strike should be granted only where there is a clear showing that the challenged defense has no bearing on the subject matter and that permitting the matter to stand would prejudice the party." *Id.* (citing *Ameriwood*, 961 F. Supp. at 1083).

The Court reviewed Swope's motion to compel arbitration [DE 5-1], Gaskins' response [DE 6], Swope's reply [8], and all attached documents. Swope's motion to compel arbitration asserts that an enforceable arbitration agreement exists and was acknowledged by Gaskins when he became employed. [DE 5-1]. As evidence Gaskins signed the agreement, Swope presented the Agreement and a copy of Gaskins' electronic signature [DE 5-3]. Swope also argued that the Agreement was enforceable and covered the claims asserted by Gaskins in his Complaint. [DE 5-

---

[2] Rule 12(f) does not apply to reply briefs because a reply is not a "pleading" under Rule 7(a). *Masterson v. Xerox Corp.*, No. 3:13-CV-692-DJH, 2016 WL 4926439, at *5 n. 5 (W.D. Ky. Sept. 14, 2016). Yet it is this Court's practice to address motions to strike filings beyond those listed in Rule 7(a). *Id.* (citing *Pixler v. Huff*, No. 3:11-CV-00207-JHM, 2011 WL 5597327, at 16–17 (W.D. Ky. Nov. 17, 2011)).

1].  In response, Gaskins asserted numerous defenses.  [DE 6].  Gaskins argued for the first time that he did not enter into the Agreement and that he never executed an electronic signature acknowledging the Agreement.  [DE 6].  He also argued that Swope waived its right to enforce the Agreement and that the Agreement itself is unconscionable.  [*Id.*].  In support of these arguments, Gaskins attached an affidavit and documents related to his case before the Kentucky Department of Labor alleging retaliation.  [*Id.*].  Swope responded to Gaskins' newly asserted arguments in its reply, which included an affidavit related to the onboarding process at Swope and the authenticity of Gaskins' electronic signature.  [DE 8; DE 8-1].  Swope also responded in opposition to the waiver and unconscionability arguments in Gaskins' reply.  [DE 8].

Courts in this circuit have held that "the purpose of a reply brief [is] to address the opposing party's arguments raised in a response brief."  *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797–98 (W.D. Tenn. 2012).  Although Swope's motion to compel arbitration did not explicitly address the authenticity of Gaskins' signature, waiver, or unconscionability, these defenses were asserted in Gaskins' response.  [DE 6].  This is consistent with the purpose of a reply brief.  *See* Masterson, , 2016 WL 4926439, at *6.  The Court finds that Swope's reply is not prejudicial to Gaskins, nor does it raise any other concern identified in Rule 12(f).  Because Swope's reply does not raise new arguments and because motions to strike are generally disfavored,  see *Hashemian*, 2013 WL 1788473, at *5, Gaskins' Motion to Strike [DE 9] is **DENIED**.

## III.    SWOPE'S MOTION TO DISMISS GASKINS' COMPLAINT AND COMPEL ARBITRATION [DE 5-1]

Swope moved to dismiss Gaskins' complaint and compel arbitration pursuant to the Agreement.  [DE 5-1].  In response, Gaskins contends that he never signed the Agreement or, in the alternative, Swope waived enforcement and the Agreement is unconscionable.  [DE 6].

4

## A. Standard

Congress enacted the United States Arbitration Act of 1925 ("FAA"), 9 U.S.C. §§ 1–16, and federal and Kentucky law favors enforcing arbitration agreements. *See Whalen v. Lord & Moses, LLC*, Case No. 09-CV-0192-JBC, 2009 WL 3766327, at *1 (E.D. Ky. Nov. 10, 2009). The FAA's purpose was to put arbitration agreements "upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).

Section 4 of the FAA provides that a party may petition a court to compel arbitration. FAA § 4. Upon such a petition, the Court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id*. Yet "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." *Id*. Thus, the Court first "must engage in a limited review to determine whether the dispute is arbitrable." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)).

In determining whether the dispute is arbitrable, the Court first looks to whether the parties formed a valid arbitration agreement. *See Braxton v. O'Charleys Rest. Props., LLC*, 1 F. Supp. 3d 722, 725 (W.D. Ky. 2014) ("Such review, the Sixth Circuit advises, requires the Court to determine first whether a valid agreement to arbitrate exists between the parties, and second whether the specific dispute falls within the substantive scope of the agreement.") (internal citations and quotations omitted). "In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate," and the necessary showing "mirrors that required to withstand summary judgment in

a civil suit." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (quoting *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129–30 (2d Cir.), *cert. denied,* 522 U.S. 948 (1997)).

### B. Analysis

Swope moved to compel arbitration and dismiss this action pursuant to the Agreement. [DE 5-1]. Neither party disputes that Gaskins' claims fall within the substantive scope of the Agreement if it is enforceable. Thus, to enforce the Agreement, the Court need only determine whether a valid contract exists. Kentucky law applies to interpreting the formation of an arbitration agreement. *See Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) ("Because arbitration agreements are fundamentally contracts, we review the enforceability of an arbitration agreement according to the applicable state law of contract formation."); *see also Gray v. Midland Funding, LLC*, No. 5:16-CV-00036-TBR, 2017 WL 1293995, at *5 n.3 (W.D. Ky. Apr. 4, 2017).

#### i.   *Enforceability of the Agreement*

First, Gaskins contends that the Agreement is not enforceable because he did not sign it and was unaware of the Agreement until it was filed as an attachment to Swope's motion. [DE 6]. In response, Swope provided affidavit related to the onboarding process for new employees and the authenticity of Gaskins' signature. [DE 8].

The Court must first determine whether the Agreement is a valid contract under Kentucky law. *See Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016). "Under Kentucky law, parties can be bound to contracts, even absent a signature, when their actions indicate acceptance of the contract's terms." *Polly v. Affiliated Comput. Servs.*, No. 10-135-ART, 2011 WL 93715, at *4 (E.D. Ky. Jan. 11, 2011) (citing *Sweeney v. Theobald*, 128 S.W.3d 498, 501 (Ky. App. 2004)). In Kentucky, acceptance is a "manifestation of assent to the terms [of an offer]

made by the offeree in a manner invited or required by the offer." *Ky. Emps. Ret. Sys. v. Seven Ctys. Servs. Inc.*, 550 B.R. 741, 761 (W.D. Ky. 2016). Courts in this circuit have held that digital acknowledgment forms indicate acceptance under Kentucky law, and "pre-dispute arbitration agreements and acknowledgment forms have been consistently enforced as binding." *Aldrich v. Univ. of Phoenix, Inc.*, No. 3:15-CV-00578-JHM, 2016 WL 915287, at *5 (W.D. Ky. Mar. 4, 2016) (citing *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1000 (6th Cir. 2009); *Polly*, 2011 WL 93715, at *1–3; *Johnson v. Career Sys. Devs.*, No. CIV. A. 4:09CV-76-M, 2010 WL 292667, at *2 (W.D. Ky. Jan. 20, 2010)).

Swope submitted evidence that Gaskins completed an electronic signature form acknowledging the Agreement. [DE 5-3 at 49]. The acknowledgment states that "I have received a copy of the [Agreement] for [Swope] and have read and understand its contents. . . . I understand and agree that any such differences will be resolved as provided in the Dispute Resolution Policy."[3] [*Id.*]. The acknowledgment was signed by Gaskins via an electronic signature on June 15, 2021. [*Id.*]. The acknowledgment also includes an IP address. [*Id.*]. Gaskins asserts that he did not sign the acknowledgment and argues that he did not receive a copy of the Agreement. [DE 6-1 at 72–73]. However, an affidavit from Swope's Chief Financial Officer, Jennifer Kessler, indicates that Gaskins signed the acknowledgment as part of Swope's onboarding process. [DE 8-1]. Swope's onboarding process takes a full day to complete, and Gaskins would not have been allowed to start his employment prior to acknowledging the Agreement. [*Id.* at 102]. Gaskins began his employment on June 15, 2021, the same date noted in his electronic signature. [DE 8-1 at 100]. Accordingly, no reasonable juror could find that Gaskins did not acknowledge the Agreement. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of

---

[3] The "Dispute Resolution Policy" is explicitly referenced in the Agreement. [DE 5-2 at 46].

evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party].").

This Court routinely finds that electronic acknowledgments of arbitration agreements manifest assent. *See, e.g.*, *Knight v. Amedisys Holding, LLC*, No. 3:16-CV-39-DJH, 2016 WL 5661227, at *3 (W.D. Ky. Sept. 28, 2016). Even if Gaskins did not sign the Agreement, the Agreement conspicuously states that "[n]o signature shall be required for the [Agreement] to be applicable." [DE 5-2 at 45]. The Agreement indicates that no signature is required for its enforcement, and assent is a condition of employment. [*Id.* at 43]. In similar circumstances, where an arbitration was a condition of continued employment, Courts in the Sixth Circuit have held that continued employment constituted assent to the terms of the agreement. *See Braxton v. O'Charley's Rest. Props., LLC*, 1 F. Supp. 3d 722, 727 (W.D. Ky. 2014) (citing *See Seawright*, 507 F.3d at 972–74; *Polly*, 2011 WL 93715, at *3–4). Based on Gaskins' electronic signature and his continued employment, the Court finds that Gaskins entered into the Agreement. Because a copy of Gaskins' driver's license signature would not affect the Court's ruling, Gaskins' Motion to Seal [DE 7] is **DENIED AS MOOT**.

### ii.     Waiver

Gaskins argues that Swope waived the right to enforce the Agreement by allowing Gaskins' workplace safety claim to proceed before the Kentucky Department of Labor. [DE 6 at 59]. In response, Swope argues that the case law cited in support of Gaskins' position is inapposite and contrary to the Agreement. [DE 8 at 94].

"A party may waive or relinquish rights to which he is entitled under a contract, and having done so may not reverse his position to the prejudice of another party to the contract." *Stamper v. Ford's Adm'x*, 260 S.W.2d 942, 943 (Ky. 1953). A party may waive its contractual right to

arbitrate if it participates in a judicial proceeding without requesting arbitration. *See Jackson v. Mackin*, 277 S.W.3d 626, 629 (Ky. App. 2009) (citing *Valley Constr. Co., Inc. v. Perry Host Mgmt. Co., Inc.*, 796 S.W.2d 365 (Ky. App. 1990)). Whether a party waived a contractual right to arbitrate is a question for the Court. *See Am. Gen. Home Equity, Inc. v. Kestel*, 253 S.W.3d 543 (Ky. 2008).

As Gaskin notes, the Agreement lists disputes subject to arbitration. [DE 5-2 at 43]. It also explicitly lists claims that are not subject to arbitration: "any claim by an employee for benefits under a plan or program which provides its own binding arbitration procedure; any statutory workers' compensation claim; and unemployment insurance claims." [*Id.* at 60]. "However, the [Agreement] will not prevent you from filing a charge with any state or federal administrative agency." [*Id.* at 45].

Gaskins cites *Jackson* to argue that Swope has waived its right to arbitrate under the Agreement. [DE 6 at 61]. In *Jackson*, the Court noted that Mackin did not assert a right to arbitrate until 15 months after Jackson filed the complaint. 277 S.W.3d at 629. During that 15-month period, the parties conducted substantial discovery. *See id.* The arbitration agreement at issue required that a written demand for arbitration be made not more than one year after the dispute arises. *See id.* The Court held that Mackin failed to comply with KRS 417.060, which requires demands for arbitration be made in a timely fashion. *See id.* Based on these facts, Mackin waived the right to arbitration under the arbitration agreement. *See id.*

Unlike the parties in *Jackson*, Swope moved to dismiss and compel arbitration only five days after this case was removed. [DE 5-1]. There is no evidence that Swope and Gaskins have engaged in substantial discovery or that Swope did not wait for an impermissible amount of time before moving to compel arbitration. *A*s a result, *Jackson* is distinguishable. Similarly, the Court

finds that Swope did not waive its right to arbitrate under the agreement by allowing Gaskins' case with the Kentucky Department of Labor to proceed.  Although the Agreement lists claims subject to arbitration, it specifically states that parties may still bring claims with state and federal agencies.  [DE 5-2 at 45].  Gaskins' case before the Kentucky Department of Labor falls squarely within this exception.  Accordingly, Swope has not waived its right to arbitrate under the Agreement.

### iii.    Unconscionability

Gaskins argues that the Agreement is unenforceable because it is unconscionable.  [DE 6 at 62].  In turn, Swope contends that none of the Agreement is unconscionable.  [DE 8 at 95].

Under Kentucky law, unconscionability is to be "directed against one-sided, oppressive, and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain."  *Conseco Fin. Servicing Corp. v. Wilder,* 47 S.W.3d 335, 341 (Ky. App. 2001) (citing *Louisville Bear Safety Serv., Inc. v. S. Ctr. Bell Tel. Co.*, 571 S.W.2d 438, 440 (Ky. App. 1978)).  Kentucky Courts have defined an unconscionable contract as one "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other."  *Id.* at 342 (citing *Black's Law Dictionary*, 1694 (4th ed. 1976)).

First, Gaskins argues that the Agreement will does not protect substantive rights by requiring mediation.  [DE 6 at 63].  In sum, Gaskins asserts that the mediation and arbitration requirements in the Agreement would prevent an employee from pursing substantive rights because of the time it takes to engage in the mediation and arbitration process.  [*Id.* at 63–66].  Employers may not "draft arbitration agreements that deter a substantial number of potential litigants from seeking any forum for the vindication of their rights."  *Morrison v. Cir. City Stores,*

*Inc.*, 317 F.3d 646 (6th Cir. 2003).  Kentucky law also prohibits enforcing arbitration agreements that do not provide at least one channel for potential litigants to pursue legal claims.  *See* KRS 366.700(5)(e).  However, there is no evidence that potential litigants would be unable to pursue their rights under the Agreement.  Although Gaskins notes that certain mediators are booked for months, other mediators have time available within a matter of days.[4]  Moreover, the Agreement explicitly states that parties may skip preliminary steps when appropriate.  [DE 5-2 at 45]. Accordingly, the Agreement is not unconscionable because of the time it would take to pursue a claim.

Second, Gaskins argues that the Agreement is unconscionable because it purports to strip the Court of its ability to review the enforceability of the Agreement.  [DE 6 at 66].  The Agreement explicitly provides:

> The arbitrators, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, arbitrability, applicability, enforceability or formation of the agreement to arbitrate including, but not limited to, any claim that all or any part of the agreement to arbitrate is void and voidable.

[DE 5-2 at 45].  Although Gaskins argues that this provision makes the Agreement unconscionable, arbitration agreements routinely delegate authority to arbiters under similar provisions.  *See Pitino v. Adidas Am., Inc.*, No. 3:17-CV-639-DJH, 2018 WL 3865408, at *1–2 (W.D. Ky. Aug. 14, 2018). Even if this provision is not entirely enforceable, Gaskins has not cited a case where a court has held an entire arbitration agreement is unconscionable based on a similar term.  Accordingly, the Agreement is not unconscionable because it delegates authority to the arbiter.

Next, Gaskins argues that the Agreement is unconscionable because it imposes punitive fee shifting.  [DE 6 at 67].  The Agreement states that any party who pursues a claim in court may

---

[4] *See* https://www.nadn.org/kentucky (last visited Nov. 22, 2022).

be liable for the opposing parties' costs and fees related to the action.  [DE 5-2 at 44].  However, the financial barrier to seek arbitration is low.  The Agreements provides in all bold:

> The AAA will then bill you and the Company each a filing fee. Your portion of that fee is limited to $150.00. The Company will pay the balance of the AAA's initial filing fee and will pay the arbitrator's fee. If you establish that you cannot pay the filing fee, the Company will pay your portion of the fee.

[*Id.* at 42].  The Sixth Circuit has held that "the arbitral forum must provide litigants with an effective substitute for the judicial forum; if the fees and costs of the arbitral forum deter potential litigants, then that forum is clearly not an effective, or even adequate, substitute for the judicial forum."  *Morrison v. Cir. City Stores, Inc.*, 317 F.3d 646, 659 (6th Cir. 2003).  Under the Agreement, the fee to participate in arbitration is limited to $150.  [DE 5-2 at 42].  If a party can establish that they cannot afford the $150 filing fee, then Swope would also absorb that cost.[5] Because the cost associated with pursuing arbitration against Swope is low, even less than pursuing remedies in court, the Court finds that the agreement does not create an unconscionable fee-shifting mechanism.

Finally, Gaskins argues that the Agreement is unconscionable because it gives Swope a unilateral right to modify the agreement.  [DE 6 at 70].  Gaskins asserts that no reasonable person would enter into the Agreement because of this term.  [*Id.*].  The Sixth Circuit has held that a unilateral modification provision does not necessarily make an arbitration agreement unconscionable.  *See Goff v. Nationwide Mut. Ins., Co.*, 825 F. App'x 298, 305 (6th Cir. 2020).  Moreover, Gaskins has not cited a case where a court in this circuit held an arbitration agreement was unenforceable based on a similar provision.  As a result, the Court finds that the Agreement is not unconscionable based on the unilateral modification provision.

---

[5] Swope correctly notes that the filing fees in state and federal court exceed a party's potential cost for initiating arbitration.

The Court has held that the agreement is enforceable against Swope and Gaskins.  Gaskins has not asserted a defense preventing this matter from being arbitrable under the Agreement. Accordingly, Swope's Motion to Dismiss Gaskins' Complaint and Compel Arbitration [DE 5-1] is **GRANTED**.

## IV.    CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1.    Gaskins' Motion to Strike [DE 9] is **DENIED**;

2.    Gaskins' Motion to Seal [DE 7] is **DENIED AS MOOT**; and

3.    Swope's Motion to Dismiss Gaskins' Complaint and Compel Arbitration [DE 5-1] is **GRANTED**.

Rebecca Grady Jennings, District Judge

United States District Court

December 9, 2022

13